## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 15-35358 |
| | ) | |
| LB STEEL, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| ———————————————— | ) | |
| | ) | |
| LB STEEL, LLC, | ) | Adversary Case No. 16-00727 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WALSH CONSTRUCTION COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

## MEMORANDUM OPINION

LB Steel, LLC (the "Debtor") filed an adversary complaint against Walsh Construction

Company ("Walsh"), seeking to avoid and recover certain funds deposited with the Clerk of the

Circuit Court of Cook County (the "Clerk") pursuant to 11 U.S.C. §§ 547(b), 548(a), 550(a), and

553(b).[1] Before the Court for ruling is Walsh's motion to dismiss the complaint pursuant to Rules

12(b)(1), 12(b)(6), and 41(b) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 12(b)(1),

12(b)(6), 41(b), made applicable to adversary proceedings by Federal Rules of Bankruptcy Procedure

7012(b) and 7041. For the reasons that follow, the motion to dismiss will be denied, and the Court

will abstain from conducting further proceedings pending the resolution of a related state court

appeal.

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to
1532, and the Federal Rules of Bankruptcy Procedure.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (F), (H), and (O). Further discussion in response to Walsh's contention about subject matter jurisdiction appears below.

## BACKGROUND

In addition to considering the facts in the complaint, the exhibit attached thereto, and other documents filed in the bankruptcy case, the Court incorporates the facts section of its memorandum opinion issued in March 2016. That opinion resolved the Debtor's adversary complaint which sought both a determination that certain funds deposited with the Clerk were property of the Debtor's bankruptcy estate and turnover of those funds to the Debtor. *See LB Steel, LLC v. Walsh Constr. Co. (In re LB Steel, LLC)*, 547 B.R. 790 (Bankr. N.D. Ill. 2016). Because the facts in the prior opinion are relevant to and provide context for this ruling, they are repeated below, together with additional facts pertinent to this Memorandum Opinion.

In January 2003, Walsh contracted with the City of Chicago (the "City") to serve as the general contractor for a construction project at O'Hare International Airport (the "Project"). Subsequently, Walsh executed a subcontract with Carlo Steel Corporation ("Carlo Steel") to fabricate steel canopies for the Project. On March 12, 2003, Carlo Steel entered into a sub-subcontract with the Debtor to make steel supports for the canopies. The Debtor, in turn, executed an agreement with Calumet Testing, Inc. ("Cal Testing") to provide weld-testing services for the steel supports.

About two years later, a surge of litigation began.

In February 2005, the Debtor filed suit in the Circuit Court of Cook County (the "Circuit Court") against Carlo Steel, Walsh, the City, and others in Case No. 05 CH 2675 for, among other things, recovery of the unpaid contract balance owed to the Debtor, as well as owner-approved extras and other work performed by the Debtor in connection with the Project. Additionally, the Debtor sought adjudication of its mechanic's lien of $1,554,654 on the public funds associated with the Project. That amount was the balance due by the City to Walsh on their contract.

In 2007, after finding various alleged construction defects in the work done on the Project, the City filed suit in the Circuit Court against Walsh for breach of contract in Case No. 07 L 3886. Thereafter, Walsh sued Carlo Steel, and Carlo Steel, in turn, filed a third-party complaint against the Debtor. Carlo Steel later assigned its claim against the Debtor to Walsh.

On June 19, 2008, the Debtor filed a complaint in the Circuit Court against Cal Testing in Case No. 08 L 6675, alleging breach of contract for failure to identify problems with the steel supports fabricated by the Debtor. That case and the one filed by the Debtor in 2005 (Case No. 05 CH 2675) were subsequently consolidated into the City's 2007 case against Walsh (Case No. 07 L 3886).

About five years later, after the City and Walsh settled the City's claims against Walsh in Case No. 07 L 3886, the Circuit Court entered an agreed order on February 21, 2013, dismissing with prejudice the City's claims against Walsh. On March 12, 2013, Walsh then filed a second amended complaint against both the Debtor and Cal Testing. In response, Cal Testing filed a counterclaim for interpleader, seeking its dismissal from the case in exchange for a deposit of funds in the amount of $1,812,696, the remainder of Cal Testing's insurance policy limit. On May 13, 2013, the Circuit Court granted Cal Testing's interpleader and entered an order directing Cal Testing to deposit

3

$1,812,696 with the Clerk (the "Cal Testing Deposit").  The order provided that upon the deposit

of those funds, Cal Testing was dismissed with prejudice and without costs from Case Nos. 07 L

3886 and 08 L 6675.  Pursuant to the order, Cal Testing deposited the funds with the Clerk on June

4, 2013.

On June 28, 2013, the City and Walsh filed a joint motion, seeking to deposit with the Clerk

funds in the amount of $1,554,654, the balance due to Walsh under its contract with the City, in

exchange for the dismissal of all claims against the City by Walsh and the Debtor.  Subsequently,

on November 12, 2013, the Circuit Court entered an order directing the City to deposit $1,554,654

with the Clerk (the "City Deposit").  According to the order, "[the Debtor's] lien [wa]s released as

to the City only and [now] attaches to the deposited funds."  Pursuant to the order, the City deposited

the funds with the Clerk on November 12, 2013.

On October 14, 2015, after a six-week trial, the Circuit Court entered a judgment in the

consolidated cases ("the Judgment Order").  The Judgment Order provided, in relevant part, as

follows:

1.      Judgment is entered in favor of Walsh ... and against [the Debtor] ...
        for Breach of Contract in the amount of $27,500,000.00;

                              * * *

3.      Judgment is entered in favor of [the Debtor] and against ...Walsh ...
        for breach of contract, in the amount of $6,500,000.00;

                              * * *

5.      Judgment is entered in favor of [the Debtor] and against Walsh on
        Count II of [the Debtor's] Counterclaim in Case No. 2007 L 3886 ...
        for lien under 770 ILCS 60/23, in the amount of $1,554,654.00;

6.    Judgment is entered in favor of [the Debtor] . . . on . . . [the Debtor's] Complaint against Cal Testing in Case No. 08 L 6675[] for the principal amount of $1,812,696.00 plus accrued interest that was deposited with the Clerk . . . by Cal Testing . . . . This $1,812,696.00 is independent of, and in addition to, the $6,500,000.00 awarded to [the Debtor] . . .;

* * *

11.   [The Debtor] shall be entitled to a credit for $6,500,000.00 based upon its contract claims, bond claim, and lien claim and $1,812,696.00 plus accrued interest based upon [the Debtor's] claims against [Cal] Testing and the funds deposited by [Cal] Testing (plus accrued interest), which amounts shall be set-off against [Walsh's] judgment, for a net judgment in favor of Walsh . . . and against [the Debtor] in the amount of $19,187,304.00, less accrued interest from funds deposited by [Cal] Testing;

* * *

13.   IT IS HEREBY ORDERED that the Clerk . . . shall release the $1,554,654.00 deposited by the City . . . with the Clerk . . ., plus accrued interest, to Walsh . . .;

14.   IT IS HEREBY ORDERED that the Clerk . . . shall release the $1,812,696.00 deposited by Cal Testing . . ., plus accrued interest, to Walsh . . .;

* * *

16.   Notwithstanding the Parties['] claim for attorneys' fees and costs against [the Debtor] and the continuance of this matter for this issue, this Court makes an express finding that there is no just reason for delaying either enforcement or appeal or both of this Judgment Order pursuant to Illinois Supreme Court Rule 304(a).

On October 18, 2015, four days after entry of the Judgment Order, the Debtor filed a voluntary petition for relief under chapter 11. Shortly thereafter, on October 23, 2015, Walsh filed a motion to modify the automatic stay, seeking to withdraw the City Funds and the Cal Testing

Funds deposited with the Clerk (together, the "Deposited Funds") and to allow Walsh to liquidate its claim for attorneys' fees and costs as provided for in the Judgment Order.

On December 4, 2015, the Debtor filed a two-count complaint (the "First Adversary complaint"). (Adv. No. 15-00876, Docket No. 1.) In Count I, asserted against Walsh, the Debtor sought a declaratory judgment that the Deposited Funds were property of the bankruptcy estate. In Count II, asserted against the Clerk, the Debtor asked for turnover of those funds.[2] Subsequently, on January 4, 2016, Walsh filed a motion to dismiss the complaint under Rule 12(b)(6). According to Walsh, the Deposited Funds were not property of the estate because the Circuit Court ordered pre-petition setoff of mutual obligations, and, therefore, the complaint had to be dismissed for failure to state a claim. In the alternative, Walsh asked the Court to abstain from making a decision under 28 U.S.C. § 1334(c)(1) because the appeal of the Judgment Order was pending in the Circuit Court.

On March 8, 2016, the Court heard oral argument on Walsh's motion to dismiss and then took the matter under advisement. On March 29, 2016, the Court issued an opinion, finding that setoff was accomplished pre-petition–through and at the time of the entry of the Judgment Order. *LB Steel*, 547 B.R. at 801. As a result, the Court concluded that the Deposited Funds were not property of the estate and that, thus, those funds could not be turned over to the Debtor. *Id.* at 801-02. Accordingly, the Court granted Walsh's motion to dismiss, and the complaint was dismissed with prejudice. *Id.* at 802.

---

[2] A week after filing the adversary complaint, the Debtor filed a motion to modify the automatic stay in the bankruptcy case in order to timely file a notice of appeal of the Judgment Order in the state court. Subsequently, Walsh, in turn, filed a motion to modify the automatic stay in order to file a cross-appeal of the Judgment Order. Both motions were granted on March 8, 2016.

On April 4, 2016, the Debtor filed a motion to alter or amend the memorandum opinion and the corresponding order dismissing the First Adversary complaint. (Adv. No. 15-00876, Docket No. 22.) In that motion, the Debtor asked the Court to make the dismissal without prejudice and to clarify that the Debtor was not precluded from, among other things, asserting claims against Walsh under chapter 5 of the Bankruptcy Code. On April 6, 2016, the Court denied the Debtor's motion, explaining that the dismissal was with prejudice as to the turnover request before the Court and that no clarification was necessary. (Hr'g Tr. 8:11-9:9, Apr. 6, 2016.) The Debtor did not file an appeal.

About eight months later, on December 13, 2016, the Debtor filed a four-count complaint against Walsh, seeking to avoid and recover the Deposited Funds (the "Second Adversary complaint"). (Adv. No. 16-00727, Docket No. 1.) The theory of the Second Adversary is that the Debtor can recover the Deposited Funds as an avoidable setoff under § 553(b) or, alternatively, as an avoidable preference or fraudulent transfer under § 547(b) or § 548(a), respectively.

On February 3, 2017, Walsh filed the instant motion to dismiss under Rules 12(b)(1), 12(b)(6), and 41(b). In the motion, Walsh argues that under the doctrine of res judicata, the dismissal of the First Adversary complaint bars any further litigation arising from the Circuit Court's Judgment Order which was the subject of that earlier suit. Walsh also contends that each count of the Second Adversary complaint should be dismissed on various concurrent grounds. In the alternative, Walsh again asks the Court to abstain from making a decision because the appeal of the Judgment Order is still pending in the Circuit Court.

On April 11, 2017, after the motion had been fully briefed, the Court heard oral argument and then took the matter under advisement. After a review of the relevant pleadings, applicable case law, and the arguments of the parties, the Court is now ready to rule.

7

## GROUNDS FOR DISMISSAL

As grounds for its motion, Walsh cites to Rules 12(b)(1), 12(b)(6), and 41(b). For the reasons that follow, the Court finds that only Rule 12(b)(6) applies here as a possible ground for dismissal.

Walsh asserts the defense of lack of subject matter jurisdiction under Rule 12(b)(1) in connection with Count I of the complaint. Walsh claims that in Count I the Debtor seeks to attack the Circuit Court's Judgment Order by asking this Court to review its express terms, thus violating the Rooker-Feldman doctrine. That doctrine prevents "lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the [federal] court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (internal quotations omitted). The Debtor does not challenge the Judgment Order, in either this adversary or the prior one. Rather, the Debtor is properly seeking review of the Order through a state court appeal. Thus, Rooker-Feldman does not deprive the Court of jurisdiction over this adversary, and, in fact, counsel for Walsh conceded during oral argument that the doctrine "may not be applicable here." (Oral Arg. Tr. 42:10-11, Apr. 11, 2017.) There is no basis for dismissal under Rule 12(b)(1).

On page 3 of its motion, Walsh cites to Rule 41(b), which provides, in relevant part, for involuntary dismissal for failure "to prosecute" an action. Fed. R. Civ. P. 7041(b). That citation is made without any discussion or elaboration. To the extent that Walsh is claiming that the Second Adversary should be dismissed under Rule 41(b) because the Debtor did not assert avoidance and recovery claims in the First Adversary complaint, thereby failing "to prosecute," that claim fails.

The Court has discretion in considering Rule 41 motions. *See Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 177 (7th Cir. 1994); *Taylor v. Metro. Water Reclamation Dist. of Greater Chi.*, Case No. 15-cv-7855, 2017 WL 372305, at *4 (N.D. Ill. Jan. 25, 2017). In particular, under Rule 41(b), the Court has an inherent power, "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962). "No precise rule can be articulated as to when a dismissal for failure to prosecute will be justified; each case is viewed in the light of its own procedural history." *Traylor v. Cent. States, South East, & Sw. Areas Pension Fund*, No. 83 C 1986, 1986 WL 1835, at *2 (N.D. Ill. Jan. 28, 1986) (citing *Stevens v. Greyhound Lines, Inc.*, 710 F.2d 1224, 1228 (7th Cir. 1983)). Although the Debtor did not bring its avoidance and recovery claims in the First Adversary, the procedural history here is not marked by false starts, delay, or a general, willful failure to prosecute typically found in cases dismissed under Rule 41(b). *See, e.g., Traylor*, 1986 WL 1835, at *3-6. For that reason, the Court, in its discretion, declines to rest its ruling upon a Rule 41(b) failure to prosecute.

That leaves only Rule 12(b)(6) for consideration. The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not to decide the merits. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). In evaluating the sufficiency of the complaint at bar, the Court must accept all well-pleaded factual allegations as true and construe them in a light most favorable to the Debtor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010).

A complaint will be dismissed under Rule 12(b)(6) unless it clears two hurdles. *See EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must contain enough factual information to give Walsh "fair notice" of the claim so that it can prepare its

9

defense. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (internal

quotation omitted). Second, the complaint must plausibly suggest that the Debtor has a right to

relief, the allegations raising that right above a "speculative level." *See Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007).

Determining whether the complaint states a plausible claim for relief is "a context-specific

task that requires the . . . [C]ourt to draw on its judicial experience and common sense." *See Iqbal*,

556 U.S. at 679. In making that determination, the Court must read the complaint and assess its

plausibility as a whole. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011). Rule 12(b)(6)

"does not impose a probability requirement at the pleading stage," but instead "simply calls for

enough fact to raise a reasonable expectation that discovery will reveal evidence of" the Debtor's

claim. *See Twombly*, 550 U.S. at 556.

## DISCUSSION

Walsh's primary argument is that the Debtor's Second Adversary complaint should be

dismissed in its entirety because it is barred by the prohibition against claim-splitting under the

doctrine of res judicata. Specifically, Walsh contends that litigation of the claims now asserted by

the Debtor is foreclosed by res judicata because the Debtor could have, but chose not to, allege those

claims in the First Adversary complaint. In response, the Debtor argues both that Walsh has failed

to establish the elements required under res judicata and that two exceptions to the doctrine apply

here, thus precluding application of res judicata to this action. For the reasons that follow, the Court

finds that res judicata is inapplicable to the Debtor's instant claims based on the "statutory scheme

exception," defined and discussed below.

### 1. Res Judicata

The doctrine of res judicata bars claims actually decided in a prior suit, as well as all others

that could have been brought. *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539,

547 (7th Cir. 2011). "The principle underlying res judicata–or claim preclusion–is to minimize 'the

expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance

on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (quoting *Mont. v.*

*United States*, 440 U.S. 147, 153-54 (1979)). Res judicata rests on the "fundamental public policy

. . . that there be an end to litigation." *Crop-Maker Soil Servs., Inc. v. Fairmount State Bank*, 881

F.2d 436, 439 (7th Cir. 1989). Notwithstanding the well-recognized purposes of the doctrine, res

judicata should not be applied woodenly; instead, courts must carefully consider each case before

imposing the doctrine's preclusive bar. *Brown v. Felsen*, 442 U.S. 127, 132 (1979) (explaining that

because res judicata "blockades unexplored paths that may lead to truth," it should "be invoked only

after careful inquiry"); *see also Patzer v. Bd. of Regents of the Univ. of Wis. Sys.*, 763 F.2d 851, 856

(7th Cir. 1985) (noting that, under Wisconsin law, res judicata is not "an ironclad rule which must

be implacably applied whenever its literal requirements are met, regardless of any countervailing

considerations").

Although res judicata is an affirmative defense, Fed. R. Civ. P. 8(c)(1), made applicable to

adversary proceedings by Fed. R. Bankr. P. 7008, it is also a defense that can be properly raised on

a motion to dismiss. *Sledge v. Bellwood Sch. Dist. 88*, 487 Fed. Appx. 313, 314 (7th Cir. 2012)

(stating that "when an affirmative defense is disclosed in the complaint, it provides a proper basis

for a Rule 12(b)(6) motion" (internal quotation omitted)); *Muhammad v. Oliver*, 547 F.3d 874, 878

11

(7th Cir. 2008) (noting that "[n]o purpose would be served by compelling [a] defendant to file an answer rather than proceed by motion when the plaintiff has pleaded the answer himself").

As the party seeking the application of res judicata, Walsh has the burden of establishing all of the elements of the doctrine. *See ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 933 (7th Cir. 2003). Walsh also bears the burden of demonstrating that there is no exception to res judicata. *See Kmart Corp. v. Intercraft Co. (In re Kmart Corp.)*, 310 B.R. 107, 119 (Bankr. N.D. Ill. 2004). "[D]oubts are resolved against preclusion." *ITOFCA*, 322 F.3d at 933 (internal quotation omitted) (explaining that "'a reasonable doubt . . . should preclude the drastic remedy of foreclosing a party from litigating an essential issue'").

Res judicata applies in the context of bankruptcy. *Matrix IV*, 649 F.3d at 550; *Johns v. Steege (In re Nat'l Indus. Chem. Co.)*, 237 B.R. 437, 441 (Bankr. N.D. Ill. 1999). When the prior suit was brought in federal court, as it was here, federal rules of res judicata apply. *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 907 (7th Cir. 1990). Under federal law, res judicata has three elements: (1) an identity of parties or their privies; (2) an identity of causes of action; and (3) a final judgment on the merits. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Arrigo v. Link*, 836 F.3d 787, 798-99 (7th Cir. 2016); *Matrix IV*, 649 F.3d at 547; *La Preferida*, 914 F.2d at 907. The Debtor asserts that Walsh has not established any of the elements in this case.[3]

---

[3] The Debtor's argument in this regard is contained in one meager, three-sentence paragraph consisting of conclusions that refer to three footnotes, none of which cite to any authority. (*See* Resp. at 8-9 ¶ 23 & nn.4-6.)

## A. The Elements

Turning to the first element, the parties to the present action are identical to the parties to the prior proceeding for purposes of res judicata. Specifically, the Debtor filed both adversaries as the sole plaintiff, and Walsh was named as a defendant in both actions.

The Debtor argues that there is no identity of parties because the Clerk was not a party to Count I in the First Adversary, and Walsh was not a party to Count II. That argument is without merit. Res judicata applies even when one action includes parties that were not named in the other action, as long as the party against whom the doctrine is asserted was a party to the other litigation. *Nat'l Indus. Chem. Co.*, 237 B.R. at 442 (citing *Dreyfus v. First Nat'l Bank of Chi.*, 424 F.2d 1171, 1175 (7th Cir. 1970)). That the Clerk was the defendant in Count II of the First Adversary is irrelevant. *See Palka v. City of Chi.*, 662 F.3d 428, 437 (7th Cir. 2011); *Czarniecki v. City of Chi.*, 633 F.3d 545, 549 (7th Cir. 2011) (explaining that the fact that a second suit did not include one of the defendants named in the first "does not affect the analysis"). Thus, the "identity of parties" element has been established.

To satisfy the second element, an identity of causes of action, the claims must arise from the same set of operative facts or the same transaction. *Matrix IV*, 649 F.3d at 547. The inquiry focuses on whether the claims contain "the same core of operative facts [that] give rise to a remedy." *Id.* (internal quotation omitted); *see also Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988). "Even if . . . two claims are based on different legal theories, the 'two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations.'" *Matrix IV*, 649 F.3d at 547 (quoting *Herrmann v. Cencom Cable Assocs.*, 999 F.3d 223, 226 (7th Cir. 1993)). That the suits are different in some respects, including the legal theories advanced and

13

some of the facts a claimant intends to use to prove its right to relief, is not enough to defeat a

finding that two claims rely on the same fundamental facts. *Ross ex rel. Ross v. Bd. of Educ. of Twp.*

*High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007). "Once a transaction has caused injury, all

claims arising from that transaction must be brought in one suit or be lost." *Car Carriers, Inc. v.*

*Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986).

Applying the federal definition of "cause of action" to the matter here, the Court finds that

the complaint in the First Adversary and the instant complaint arise out of the same core of operative

facts. In all relevant respects, the events, circumstances, and other facts in the present adversary are

the same as those alleged in the First Adversary. Specifically, both adversaries were based on the

litigation between and among the various parties which culminated in the entry of the Judgment

Order by the Circuit Court. In the First Adversary, the Debtor alleged that the Deposited Funds were

property of the bankruptcy estate and sought both a declaratory judgment to that effect and turnover

of the Funds. Here, the Debtor alleges that it is entitled to recover the Deposited Funds as an

avoidable setoff under § 553(b) or, alternatively, as an avoidable preference or fraudulent transfer

under § 547(b) or § 548(a), respectively. Ultimately, the two adversaries arose out of the same core

of operative facts because the rights and obligations of the parties pursuant to the Judgment Order

are a necessary, factual underpinning for the current action. The only difference between the two

actions is the legal theory advanced.

The Debtor does not argue that the two adversaries fail to share the same core of operative

facts that give rise to a remedy. Rather, the Debtor summarily contends that there is no identity of

causes of action here because the causes of action raised in the instant complaint "have nothing to

do with the causes of action" in the prior one. (Resp. at 8-9, ¶ 23 & n.6.) As discussed above, the

14

application of res judicata "depends on differences in the underlying facts, not differences in the legal theories relied on." *Herzog v. Kroner*, No. 90 C 3799, 1990 WL 114059, at *2 (N.D. Ill. Aug. 2, 1990). "[A] mere change in the legal theory does not create a new cause of action." *Car Carriers*, 789 F.2d at 593. The facts alleged in both adversaries are identical. Accordingly, Walsh has established the "identity of causes of action" element for purposes of res judicata.

Finally, for res judicata to apply, there must have been a final judgment on the merits. "A dismissal 'with prejudice' is a final judgment on the merits which will bar a second suit between the same parties for the same cause of action." *Am. Needle & Novelty Co. v. Schuessler Knitting Mills, Inc.*, 379 F.2d 376, 378 (7th Cir. 1967). Here, the memorandum opinion and corresponding order in the First Adversary granted Walsh's motion to dismiss the complaint in that proceeding with prejudice. Because the action was dismissed "with prejudice," the order was a final adjudication on the merits which precludes subsequent suits on the same cause of action. *See In re Energy Coop., Inc.*, 814 F.2d 1226, 1234-35 (7th Cir. 1987); *Phillips v. Shannon*, 445 F.2d 460, 462 (7th Cir. 1971). Therefore, the third element has been satisfied.

## B. Exceptions to Res Judicata

Despite the presence of the three elements required for res judicata, the Debtor argues that two exceptions to the doctrine apply here. First, the Debtor contends that there is a "declaratory judgment exception" that prevents the application of res judicata to its suit. Second, the Debtor relies on a "statutory scheme exception" that allows plaintiffs to split their claims. The Court will examine each exception in turn.

### i. The Declaratory Judgment Exception

First, the Debtor bases its argument that the instant suit is actionable on the premise that traditional res judicata principles do not apply to declaratory judgment actions. Specifically, the Debtor relies on Seventh Circuit case law that recognizes an exception to res judicata in cases in which the only relief sought in the first action was a declaratory judgment (the "Declaratory Judgment Exception"). *See, e.g., Allan Block Corp. v. Cty. Materials Corp.*, 512 F.3d 912, 916 (7th Cir. 2008). Under this exception, "a declaratory action determines only what it actually decides and therefore does not have a claim preclusive effect on other contentions that might have been advanced." *Smith v. City of Chi.*, 820 F.2d 916, 919 (7th Cir. 1987). Much of the case law acknowledging the Declaratory Judgment Exception relies on § 2202 of the Declaratory Judgment Act (the "Act"), which provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

The purpose of a declaratory action is to provide "a remedy that is simpler and less harsh than coercive relief." *Stericycle, Inc. v. City of Delavan*, 120 F.3d 657, 659 (7th Cir. 1997) (internal quotation omitted); *Mandarino v. Pollard*, 718 F.2d 845, 848 (7th Cir. 1983). This purpose "is furthered when a plaintiff who has sought 'solely' declaratory relief is later permitted to seek additional, coercive relief based on the same claim." *Mandarino*, 718 F.2d at 848. Giving a declaratory judgment preclusive effect "would stymie a plaintiff who, having obtained [the] judgment, later sought . . . injunctive relief, an authorized and common sequel to a declaratory judgment." *Allan Block*, 512 F.3d at 916.

16

Accordingly, the Declaratory Judgment Exception aims "to carry out the principle that every court, with few exceptions, has inherent power to enforce its own decrees and to make such orders as may be necessary to render them effective." *Bicoastal Corp. v. Semi-Tech Microelectronics (Far East) Ltd. (In re Bicoastal Corp.)*, 156 B.R. 327, 331 (Bankr. M.D. Fla. 1993). The exception thereby allows a court to retain jurisdiction "to enter such further orders as it deems necessary or proper to give complete and effectual relief consistent with its declaratory judgment." *Omaha Indem. Ins. Co. v. Cardon Oil Co.*, 687 F. Supp. 502, 503 (N.D. Cal. 1988), *aff'd*, 902 F.2d 40 (9th Cir. 1990).

Here, the Debtor did not seek "solely" declaratory relief in the First Adversary. Rather, the Debtor's request for declaratory relief in that proceeding was coupled with a request for turnover. Therefore, the Declaratory Judgment Exception is not applicable to this matter. *See* 28 U.S.C. § 2202; *Allan Block*, 512 F.3d at 916; *Stericycle*, 120 F.3d at 659; *Smith*, 820 F.2d at 919.

The Debtor attempts to escape the reasoning of the exception by insisting that the complaint in the First Adversary sought coercive relief only against the Clerk–not against Walsh. That argument is unavailing. The Clerk was merely the custodian of the Deposited Funds. Accordingly, the first complaint contained a prayer for coercive relief, which makes the Declaratory Judgment Exception inapplicable.[4] *See, e.g., Brannock Assocs., Inc. v. Capitol 801 Corp.*, 807 F. Supp. 127, 134 & n.14 (D.D.C. 1992) (finding that original claim contained both declaratory and coercive relief

---

[4] The Debtor goes to great lengths to explain why the complaint in the First Adversary included a claim for coercive relief in addition to the request for a declaratory judgment. Specifically, the Debtor contends that under Seventh Circuit law, the Court would not have had the power to decide solely whether the Deposited Funds constituted property of the bankruptcy estate without violating the case and controversy requirement of the United States Constitution. *See In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) (concluding that "the determination of whether certain property belongs to the estate should not be made outside of a specific controversy, such as a turnover action"). Notwithstanding the substance of that argument, the fact remains that the Debtor sought both declaratory and coercive relief in the First Adversary.

where prayer for relief included request that the court "order the Defendant to direct its Escrow Agents to carry out the relief required by [the court's] declaratory judgment").

The exception also does not apply here because the Debtor did not prevail in the First Adversary. Under the exception, only the prevailing party in a declaratory judgment action may seek further relief in the form of damages or an injunction. *See* 28 U.S.C. § 2202; *Alexander & Alexander, Inc. v. Van Impe*, 787 F.2d 163, 166 (3d Cir. 1986); *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 410 (S.D.N.Y. 2012); *Am. Forest Res. Council v. Shea*, 172 F. Supp. 2d 24, 29-30 (D.D.C. 2001).

Because the First Adversary complaint included a request for both declaratory and coercive relief and the Debtor was not the prevailing party in that action, the Debtor cannot invoke the Declaratory Judgment Exception to circumvent the application of res judicata.

### ii.  The Statutory Scheme Exception

Although not expressly citing thereto, the Debtor's second argument is clearly based on the exception in § 26(1)(d) of the Restatement (Second) of Judgments. That exception provides, in pertinent part, that the general rule of claim splitting does not apply where "it is the sense of the [statutory] scheme that the plaintiff should be permitted to split [its] claim" (the "Statutory Scheme Exception").[5]  Restatement (Second) of Judgments § 26(1)(d): Exceptions to the General Rule

---

[5] The other exceptions under the Restatement, none of which applies here, are as follows:

    (a)    The parties have agreed in terms or in effect that the plaintiff may split [its] claim, or the defendant has acquiesced therein; or

    (b)    The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or

    (c)    The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on

Concerning Splitting (Am. Law Inst. 1982). In connection with this exception, the issue to be resolved by the Court is whether "the sense of the [statutory] scheme" of the Bankruptcy Code requires a plaintiff to bring a claim for turnover and a claim for avoidance in the same suit.

The Debtor's theory is that Congress did not intend for turnover complaints to necessarily include avoidance claims. Not surprisingly, Walsh disagrees, arguing that a party must bring an avoidance action at the same time it asserts turnover. In support of that position, Walsh cites to and relies on *Spradlin v. Khouri (In re Bruner)*, Case No. 13-51267, Adv. No. 15-5119, 2016 WL 868889 (Bankr. E.D. Ky. Mar. 7, 2016). In *Bruner*, the trustee brought a turnover action to recover funds that were transferred by the Debtor's mother from a bank account, held jointly with the Debtor, to the Debtor's criminal defense attorneys. *Id.* at *1. After conducting a trial on the merits, the bankruptcy court found that the funds were not property of the bankruptcy estate and, therefore, not subject to turnover. *Id.* The trustee then filed a subsequent avoidance action against the Debtor's

---

the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief; or

\* \* \*

(e)     For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course; or

(f)     It is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or the failure of the prior litigation to yield a coherent disposition of the controversy.

Restatement (Second) of Judgments § 26(1): Exceptions to the General Rule Concerning Splitting (Am. Law Inst. 1982).

criminal defense attorneys. *Id.* Granting the defendants' 12(b)(6) motion, the court dismissed the proceeding, holding that the trustee should have pled avoidance in the prior turnover action and that, by failing to do so, her claims were barred by res judicata. *Id.* at *2-3.

Although *Bruner* is factually similar to the matter at bar, it is also readily distinguishable. Notably, the defendants in *Bruner* did not contend that any exceptions to res judicata applied; rather, they argued only that the trustee failed to demonstrate all of the elements required under res judicata and that amending the complaint would be futile. *Id.* at *1-3. Thus, the decision contains no discussion about any established exceptions to the doctrine of res judicata. Additionally, the trustee brought the adversary for turnover against the defendants pursuant to § 542, not § 543, the statute under which the Debtor filed the turnover claim in the First Adversary complaint–a distinction that is procedurally relevant, as will be discussed below. In any event, *Bruner* is non-precedential, and, as such, this Court is not bound to follow it.[6] Instead, the Court elects to look to the Bankruptcy Code itself and the entire statutory scheme in resolving the issue at bar.

Turning to the Code, nothing therein requires turnover and avoidance claims to be brought together or otherwise indicates that a plaintiff cannot split its cause of action into two separate suits. In fact, a consideration of the entire statutory scheme suggests that the Second Adversary in this case should be allowed to proceed.

A broad purpose of the Code is to ensure a fair distribution of the debtor's assets among creditors. *Smith v. SIPI, LLC (In re Smith),* 811 F.3d 228, 238 (7th Cir. 2016) (discussing that purpose in the context of fraudulent transfer law). Indeed, "[e]quality of distribution among creditors

---

[6] The Court's independent research failed to uncover any cases in this circuit mandating that a plaintiff bring avoidance and turnover claims in one suit. In fact, the only case touching on the precise issue appears to be *Bruner.*

is a central policy of the Bankruptcy Code." *Begier v. IRS*, 496 U.S. 53, 58 (1990). Various

provisions of the Code, including §§ 547(b), 548(a), and 553(b), further this policy by allowing for

the avoidance of certain preferential payments made pre-petition. *Id.* The mechanisms provided by

these statutes prevent "the debtor from favoring one creditor over others by transferring property

shortly before filing for bankruptcy." *Id.*

Without the potential of recovery of the Deposited Funds by the Debtor, if appropriate, as

an avoidable setoff, preference, or fraudulent transfer, Walsh could undoubtedly be in a better

position than the Debtor's other general unsecured creditors. This outcome conflicts with the Code's

policy of equality of distribution among creditors. That interest in uniform treatment, as well as the

idea that no one creditor should benefit by mistake, ultimately trumps the policies supporting the law

of res judicata. *See* Restatement, *supra*, § 26 cmt. e.

Moreover, a basic consideration of the life cycle of a typical chapter 11 case suggests that

adjudication of the Debtor's claims in the Second Adversary, which ordinarily might be considered

repetitive, should be allowed here. On commencement of a chapter 11 case, all of the debtor's

property becomes property of the estate. 11 U.S.C. § 541(a). What constitutes property of the estate,

however, is not always a simple determination and, as evident in the First Adversary in this case, is

frequently in contention. Nevertheless, once that determination has been made, anyone who has

possession, custody, or control of property that the trustee could use, sell, or lease pursuant to § 363

must turn over that property to the trustee or the debtor-in-possession. 11 U.S.C. § 542(a); *United*

*States v. Whiting Pools, Inc.*, 462 U.S. 198, 205-08 (1983) (explaining that § 542(a) allows the

trustee to "bring into the estate property in which the debtor did not have a possessory interest at the

time the bankruptcy proceedings commenced"); *see also* 11 U.S.C. § 1107(a). When estate property

is not turned over, the trustee has the power to ask the court to compel turnover. *Gierum v. Glick (In re Glick)*, No. 13 B 20989, 2017 WL 2473312, at *25 (Bankr. N.D. Ill. June 8, 2017). Because only property of the estate is subject to turnover, *id.*, it is not uncommon for a party to bring a complaint early in a bankruptcy case seeking both a declaratory judgment that certain property is estate property and a request for its turnover. *See, e.g., Hoseman v. Weinschneider (In re Weinschneider)*, Nos. 89 B 17026, 98 A 00472, 1999 WL 676519, at *4-5 (Bankr. N.D. Ill. Aug. 30, 1999).

In addition to seeking turnover in the initial stages of a case, the debtor may file motions for the use of cash collateral, seek approval of DIP financing, and negotiate with trade creditors to re-establish trade terms. The debtor may also meet with the United States Trustee and professionals of official creditors' committees, negotiate with secured creditors regarding arrangements for adequate protection, defend stay relief motions brought by secured creditors, assume or reject unexpired contracts, and negotiate and refine an ultimate exit strategy.

Although the sequence of events in a chapter 11 bankruptcy varies on a case-by-case basis, the evaluation and commencement of potential avoidance actions typically take place, as a practical matter, later in the bankruptcy case. In fact, avoidance actions are often brought post-confirmation, especially in liquidating chapter 11 cases, provided that such potential claims are preserved in a chapter 11 plan or disclosure statement. *See* 11 U.S.C. § 1123(b)(3); *Spicer v. Laguna Madre Oil & Gas II, L.L.C. (In re Tex. Wyo. Drilling, Inc.)*, 647 F.3d 547, 549, 553 (5th Cir. 2011); *P.A. Bergner & Co. v. Bank One, Milwaukee, N.A. (In re P.A. Bergner & Co.)*, 140 F.3d 1111, 1117 (7th Cir. 1998). In some instances, avoidance litigation may be settled, either early on or later in the case. In any event, a debtor maintaining operations and reorganizing as a going concern may opt to delay

22

the commencement of avoidance actions or never bring them at all in order to preserve relationships

with creditors extending credit and supplying the debtor with goods and services post-petition.

Based on the practical realities of chapter 11 cases and the consequences of filing avoidance actions,

precluding the Debtor from splitting its claims would be inconsistent with the fair and equitable

implementation of the statutory scheme of the Code.

That res judicata should not bar the Second Adversary is bolstered by the procedural context

in which avoidance claims and § 543 turnover claims are typically brought and determined. Pursuant

to Rules 6002 and 9014, Fed. R. Bankr. P. 6002 & 9014, a request for turnover under § 543 is

brought in a bankruptcy case as a contested matter, "a procedural vehicle designed to decide quickly

those matters that move ahead the administration of the estate."[7] *See L.J. Hooker Int'l Fla.., Inc. v.*

*Gelina (In re Hooker Invs., Inc.)*, 131 B.R. 922, 929-31 (S.D.N.Y. 1991) (discussing the similar

procedural context in which rejection motions are brought under § 365). Requiring a party to raise

and litigate a § 543 motion for turnover by bringing the request through an adversary proceeding

"would thwart Congress'[s] intent in directing that [such a] motion be resolved as a 'fast track' ...

contested matter." *See id.* at 931; *see also* Restatement, *supra*, § 26 cmt. e & illus. 5. In contrast,

the more complex allegations of avoidance must be brought by an adversary proceeding, *see* Fed.

R. Bankr. P. 7001(2), a formal approach which is, "taken as a whole, inappropriate to decide

contested matters where the issues may be relatively simple or where expedition is necessary."

*Hooker*, 131 B.R. at 930.

---

[7] Rule 7001(1) requires most requests to recover money or property to be brought by an adversary proceeding. Fed. R. Bankr. P. 7001(1); *Perkins*, 902 F.2d at 1258. One exception to Rule 7001(1), however, is for proceedings under Rule 6002, which addresses the accounting required by any custodian in possession or control of property to be turned over to the trustee. *See* Fed. R. Bankr. P. 6002, 7001(1). That exception has been interpreted to require that a proceeding for turnover by a custodian under § 543 be brought by motion. *In re NTG Indus., Inc.*, 118 B.R. 606, 607 n.1 (Bankr. N.D Ill. 1990).

True, the Debtor here brought its § 543 turnover claim in an adversary proceeding, because, as the Debtor quite rightly explains, that approach is required for a declaratory judgment which the Debtor sought in connection with the turnover. *See* Fed. R. Bankr. P. 7001(9). For purposes of resolving the issue at bar, however, the Court's examination and analysis must focus on the statutory scheme of the Code as a whole. Based on that analysis, the Court finds that the Code evidences an intent to separate the § 543 turnover process from the avoidance process; if combining an avoidance claim and a request for § 543 turnover in one suit were intended to be mandatory, the required procedures would not be different.

The Court acknowledges that whether a prior decision was rendered in a contested matter or an adversary proceeding is not outcome-determinative as to whether res judicata applies to bar a subsequent proceeding. Nevertheless, it can "serve as an important factor in determining whether [a] claim could or should have been effectively litigated in [an] earlier proceeding." *Hooker*, 131 B.R. at 931 (internal quotation omitted).

For the reasons discussed above, the Court finds that the purposes of res judicata would not be served by barring the Debtor's claims in the Second Adversary and that applying the doctrine here would be inequitable. *See Amari Co. v. Burgess*, 955 F. Supp. 2d 868, 883 (N.D. Ill. 2013) ("*Res judicata* will not be applied where it would be fundamentally unfair to do so") (internal quotation omitted)). Res judicata must "strike a delicate balance between, on the one hand, the interests of the defendant and of the courts in bringing litigation to a close and, on the other, the interest of the plaintiff in the vindication of a just claim." *ITOFCA*, 322 F.3d at 933 (internal quotation omitted) (noting that the rules of preclusion are "'affected by the . . . desire to achieve a proper balance between foreclosure and a fair opportunity to litigate'"). Evaluating the countervailing

24

considerations in this matter, and resolving doubts against preclusion, the Court concludes that such

a balance weighs in favor of allowing the Debtor to litigate its claims. Accordingly, the Court holds

that the Statutory Scheme Exception applies here, and the Debtor's First Adversary does not, under

the doctrine of res judicata, bar its subsequent complaint in the Second Adversary.

## 2. Dismissal of Each Count on Concurrent Grounds

Although it spends most of its energy arguing for dismissal on the grounds of res judicata,

Walsh also contends that each count of the Debtor's complaint should be dismissed on concurrent

grounds. Specifically, Walsh argues that Count I fails to state a claim upon which relief can be

granted under § 553(b) because the plain language of the statute provides that setoff must be

accomplished by "a creditor"; according to Walsh, the setoff here cannot be avoided, because it was

effectuated not by Walsh but by the Circuit Court through the entry of the Judgment Order. In

response, the Debtor contends that Walsh's "strained misinterpretation" of the statute produces an

"absurd" result inconsistent with the overall statutory scheme of the Code. (Resp. at 9-10.)

As to Counts II and III, Walsh argues that neither states a proper claim for relief under §

547(b) or § 548(a) because a setoff is not a "transfer" as that term is defined by the Code for

purposes of avoidance under those statutes. In response, the Debtor asserts that Counts II and III

were brought in the alternative in the event that the Court does not consider the "conveyance" at

issue a "setoff" and that the "involuntary conveyance" can, indeed, be considered a recoverable

transfer under either § 547(b) or § 548(a). (Resp. at 10-11.)

Finally, as to Count IV, Walsh argues that § 502(d) requires a prior judicial determination

that a claimant is the transferee of an avoidable transfer, a determination that, according to Walsh,

is not possible given the Debtor's failure to state a valid claim upon which relief can be granted in

Counts I, II, and III. The Debtor responds that to the extent that it prevails on any of the counts, it will be entitled to recovery under Count IV.

Turning to the complaint here, the Court finds that enough factual information is provided therein to give Walsh "fair notice" of the Debtor's claims so that Walsh can prepare its defense. Although it is less clear whether the complaint plausibly suggests, above a "speculative level," that the Debtor has a right to relief, Rule 12(b)(6) imposes no "probability requirement" at the pleading stage. *See Twombly*, 550 U.S. at 556. In any event, given that the Court will abstain from adjudicating the Debtor's complaint until the state court has rendered its decision on the appeal of the Judgment Order, as discussed below, the Court need not address, decide, or dismiss any of the claims at this juncture for failure to state a claim upon which relief can be granted. Accordingly, Walsh's 12(b)(6) motion to dismiss on concurrent grounds is denied.

### 3. Abstention

Walsh asks the Court, in the alternative, to abstain from making a decision under 28 U.S.C. § 1334(c)(1), because the appeal of the Judgment Order is pending in the Circuit Court. Specifically, Walsh argues that abstention is warranted here because the relief that the Debtor seeks in the Second Adversary complaint is "inextricably intertwined" with the Judgment Order now on appeal. (Reply at 14-15.)

"[I]n the interest of justice, or in the interest of comity with State courts or respect for State law," a court may abstain from "hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). "The doctrine of abstention, under which a . . . [c]ourt may decline to exercise or postpone the exercise of its jurisdiction," is, however,

26

"the exception, not the rule." *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).

To determine if permissive abstention is appropriate, courts consider a number of factors, including the following:

> (1) the effect or lack thereof on the efficient administration of the estate if a [c]ourt recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993) (internal quotation omitted). Other factors to consider include the "desirability of avoiding piecemeal litigation" and "the order in which jurisdiction was obtained by the concurrent forums." *Colo. River*, 424 U.S. at 818. "Courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d at 1189; *see also Colo. River*, 424 U.S. at 818-19 (explaining that "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors [counseling] against that exercise is required").

Here, consideration of the factors above compellingly weighs in favor of abstention. The most important of these is the related appeal of the Judgment Order in the state court. The relief that

the Debtor seeks in the Second Adversary complaint is intricately connected to the Judgment Order. That Order was the culmination of nearly a decade of state court proceedings, which began in February 2005 when the Debtor filed suit against Walsh and others and currently continues as the state court considers the appeal. In contrast, the bankruptcy court has had jurisdiction only since October 2015, when the Debtor filed its petition for relief under chapter 11. And although the ultimate determination of avoidance is exclusively a federal bankruptcy concept, the issues underlying the Judgment Order are based on and arise from breach of contract under state law. Given the related nature of the Debtor's Second Adversary complaint to the issues raised in the pending state court appeal, the order in which the concurrent forums obtained jurisdiction, and the extensive litigation that has already taken place in the state court, abstention is proper in the matter at bar.

Additionally, awaiting the appellate court's decision will conserve judicial resources, avoid the possibility of inconsistent rulings, and, ultimately, provide for the efficient judicial administration of the estate. Specifically, if the Judgment Order is reversed, the Debtor's Second Adversary complaint will become moot. By deferring to the state court, this Court will not have to needlessly extend judicial resources, and neither party will be required to incur the expense of litigation in this Court. Further, waiting for the state court to rule on the appeal will obviate the need to potentially vacate this Court's orders or move the Deposited Funds from one party to another.

The Court does "not overlook the heavy obligation to exercise jurisdiction." *See Colo. River*, 424 U.S. at 820. The situation in this particular case, however, justifies the Court's abstention until the appellate court makes its decision. For this reason, the abstention that the Court will order will provide for a stay of the Second Adversary proceeding until the state court resolves the appeal.

28

By staying, rather than dismissing, the adversary, the Court will retain jurisdiction in case the resolution of the state court appeal necessitates further action here. *See Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 698 (7th Cir. 1985). Accordingly, the Court, in its discretion, abstains from resolving the dispute at bar until the appeal in the state court has been resolved. At that time, further proceedings in this Court will be conducted, if necessary, leading to an ultimate disposition of the Debtor's Second Adversary complaint. A status hearing on the Second Adversary proceeding is set for December 14, 2017 at 10:00 a.m. before the undersigned in Courtroom 615.

## CONCLUSION

For the foregoing reasons, the Court finds that the Statutory Scheme Exception precludes the application of res judicata to bar the Debtor's Second Adversary proceeding and, thus, Walsh's motion to dismiss is denied. In its discretion, the Court abstains from conducting further proceedings in connection with the Second Adversary until the state court has rendered its decision on the appeal of the Judgment Order. A separate order will be entered consistent with this Memorandum Opinion.

Dated: July 6, 2017

ENTERED:

Janet S. Baer
Bankruptcy Judge

29